# TANNER & ORTEGA, L.L.P.
ATTORNEYS AT LAW
WWW.TANNERORTEGA.COM

HOWARD E. TANNER*
HUGO G. ORTEGA
*MEMBER OF N.Y., N.J. AND D.C. BAR

**NEW YORK CITY OFFICE**
277 BROADWAY
SUITE 1701A
NEW YORK, NY 10007
OFFICE: (212) 962-1333
FAX: (212) 962-1778

**WHITE PLAINS OFFICE**
170 HAMILTON AVENUE
SUITE 300
WHITE PLAINS, NY 10601
OFFICE: (914) 358-5998
FAX: (212) 962-1778

June 30, 2026

Honorable Philip M. Halpern
United States District Judge
United States District Courthouse
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

BY ECF AND EMAIL/PDF

Re:    ***United States v. Michael O'Flaherty*, 26 Cr. 67 (PMH)**
**Defense Sentencing Letter**

Dear Judge Halpern:

I submit this sentencing letter on behalf of Michael O'Flaherty, who is scheduled to be sentenced by this Court on Tuesday, July 21, 2026 at 2:00 pm for his plea of guilty to the instant single count Information (ECF Doc No. 31), which charged him with making False Statements in violation of 18 U.S.C. §1001(a)(2). For the mitigating reasons set forth in this letter, including the defendant's excellent personal history substantiated by the attached letters attesting to his exceptional character from family, friends, colleagues and dozens of other upstanding members of the community; his education, employment history and record of accomplishment and service as a member of service with the New York State Police; close family and community ties, ██████ ████████████████████████████████████████████████, and other factors, I respectfully request that the Court impose a Guidelines range sentence of Probation for a period of one year, which would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a).

**<u>Case Background, The Plea Agreement and Probation PSR</u>**

The defendant is in receipt of the Probation Office's Final Presentence Report dated May 12, 2026 (ECF Doc No. 35) ("PSR"). In 2019 Mr. O'Flaherty, working in the New York State Police ("NYSP") Troop K Violent Gang and Narcotics Enforcement Team as an Investigator, participated in a narcotics investigation which led to the arrest of Individual-1 who agreed to cooperate with the NYSP as a confidential informant ("CI"). He was assigned as the CI's handler, who provided assistance to the NYSP in narcotics distribution investigations in and

1

around Dutchess County, New York. The defendant was subsequently directed to deactivate the CI in 2022. He remained in contact with Individual-1 both before and after the CI's deactivation and in fact developed a friendly relationship with him and communicated regularly about personal matters. As detailed in the PSR, On June 2, 2022, a NYSP confidential informant ("Source-1") told the defendant that Individual-1 had resumed selling drugs with a supplier in New York City. On June 3, 2022, he and another officer from NYSP met with Source-1, who provided further information. Based on the information received, a series of meetings, text messages and phone calls between the defendant and Individual-1 took place following the meeting with Source-1(PSR ¶9-13), in which O'Flaherty falsely told Individual-1 that he knew a New York City Police Department officer who was transporting drugs and that he would either help him do it on occasion or transport it himself to make extra money. He asked Individual-1 if he would want to make money by helping him transport the drugs. Although Individual-1 declined the offer, the defendant continued to propose it over the next several days. The defendant notified his supervisor about this in requesting permission for authority to continue to hold himself out to Individual-1 to be a corrupt police officer involved in transporting narcotics, which was granted. However, he told his supervisor that it had been Individual-1 who had initially asked him for assistance in transporting drugs and not that it was, in fact, the other way around. According to the Government, the permission to pursue the aforementioned corrupt officer plan was granted based upon O'Flaherty's representation to his supervisor that Individual-1 had solicited him (PSR ¶15(a)). In September 2022, O'Flaherty advised his supervisor that his ruse efforts were unsuccessful and would try again after Source-1 was released from prison. This led to the chain of events described in the PSR (¶¶19-34) including the arrest of Individual-1 by the Dutchess County Sheriff's Office for sale of narcotics and subsequent post-arrest interview. On December 22, 2022, Mr. O'Flaherty appeared with prior defense counsel for a proffer meeting at the White Plains Office of the U.S. Attorney's Office, when he made the false statements to the Case Agent as specified in the Information.

On November 21, 2024, Mr. O'Flaherty was arrested and charged in a Complaint (ECF Doc No. 1) with two counts of Obstruction of an Official Proceeding, 18 U.S.C. §1512(b)(2)(B) and 2 and two counts of Making False Statements pursuant to 18 U.S.C. §1001(a)(2). He made his Initial Appearance before the Honorable Victoria Reznik the same day and was released on an unsecured $50,000 personal recognizance bond consigned by two financially responsible persons with standard conditions. (ECF Doc No. 4). Michael has been fully complaint with all conditions of release since the inception of this case.

After extensive negotiations, the parties were able to reach a pretrial resolution by Plea Agreement, dated December 17, 2025. On February 18, 2026, the defendant appeared before your Honor and pleaded guilty to the aforementioned single count Information which charged False Statements. The parties stipulated to the following offense level calculations and Criminal History Category under the Guidelines. Specifically, the parties agreed to a base offense level of 6 pursuant to USSG §2B1.1(a)(2). A two-level enhancement applies for abuse of public trust pursuant to USSG §3B1.3. With a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1(a) the Total Offense Level is 6, which, which at Criminal History Category I, calculates to a Guidelines range of 0-6 months' imprisonment.

The Probation Office, however, correctly credits the defendant with a two-level reduction as a Zero-Point Offender, due to this case representing the defendant's first arrest and conviction,

2

pursuant to USSG §§4C1.1(a) and (b), which therefore calculates to a Total Offense Level of 4. This discrepancy, however has no effect on the stipulated Guidelines range of 0-6 months' imprisonment. (PSR ¶83). I nevertheless agree with Probation's calculation. Probation recommends a sentence of time served to be followed by 3 years' Supervised Release, a $500 fine, and special conditions to include 100 hours of community service, a search and seizure provision, mental health and financial mandates. (PSR, Addendum at 29-30). I certainly agree with the Probation Office that a non-custodial sentence would be appropriate, especially in light of the policy which categorically states that non-custodial sentences are generally appropriate for Zero-Point offenders in Zone A, pursuant to USSG §5C1.1 n.9. However, I submit that the recommended supervision term of three years and the special conditions of community service, search and seizure and financial mandates are greater than necessary and frankly, would constitute a waste of resources, for the reasons detailed herein.

The PSR as well as the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ details Michael's personal and family background (PSR ¶¶43-49); Physical and mental health[1] (PSR ¶¶67-71); and educational, vocational and employment history (PSR ¶¶73-77). Therefore, for the purpose of brevity, I will not repeat those details but focus on how the applicable 18 USC §3553(a) factors support the defense requested Guidelines range sentence of probation for one year.

<u>**Sentencing Considerations**</u>
<u>**Request for a Non-Custodial Guidelines Range Sentence**</u>

In *Gall v. United States*, 552 U.S. 38, 49-50 (2007), the Supreme Court held that the guidelines provide a starting point for a reasonable sentence, however, a sentencing court "must make an individualized assessment based on the facts presented." The Court also stated that the sentencing court cannot "presume that the Guidelines range is reasonable." *Id.* As a result, the sentencing court can use the advisory guidelines to create an appropriate sentence after considering the factors enumerated in 18 U.S.C. § 3553(a). In this case, the defense recommended sentence is within the advisory range which I submit would be sufficient but not greater than necessary.

Pursuant to *United States v. Booker*, 543 U.S. 220 (2005), I request that the Court consider the aforementioned Guideline range along with the following factors listed in 18 U.S.C. §3553(a):

<u>18 U.S.C. § 3553(a) FACTORS</u>

The nature and circumstances of the offense and the history and characteristics of the defendant.

a)    The nature and circumstances of the offense

The defendant has pled guilty to making false statements to a Special Agent with the United States Attorney's Office during a proffer meeting, which is clearly serious. There is no

[1] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3

doubt that persons who do so and lie or mislead, complicate and cause delays, higher costs and other issues in Government investigations. Congress therefore saw fit to criminalize this conduct, as distinguished from many states of the union, including New York, that do not make it a crime to lie to law enforcement officials and prosecutors.[2] In the instant case, there was a potential allegation of corruption that the Government was investigating. The defendant chose to voluntarily meet for the proffer, with the assistance of counsel and despite being warned about the consequences of lying to federal agents, and as a law enforcement officer himself, chose to do so anyway.

It must be noted however, that the subject matter underlying almost all of the false statements themselves related to what would have been NYSP disciplinary violations, not criminal offenses. For example, arranging for and meeting with the CI without another member of service present; failure to document all substantive contacts with the CI; telling his supervisor that it was the CI's suggestion, rather than O'Flaherty's suggestion, for O'Flaherty to participate with the defendant in transporting drugs, and everything that flowed from the "corrupt cop" plan, such as the texts of pictures cash, location of meetings and failure to documents the substantive contacts. Other conduct underlying a false statement, specifically Michael's receipt of sneakers from the CI worth $200 from the CI, for which the defendant paid the CI, contrary to the Government's allegation in the PSR (at ¶11), was also an NYSP disciplinary issue, not a criminal offense. Finally, as to his false statement about disclosing to the CI that he was under investigation, Michael's intent was not to impede the investigation by the Dutchess County Sheriff's Office into his CI, but arose out of "politics", from a substantial rivalry history between two law enforcement agencies, competing against each other for funding, in wanting to "get the credit" for the arrest of the CI and seizure of narcotics. This history is replete with instances of these agencies withholding or delaying information one from the other.[3] The foregoing is not offered to minimize the defendant's conduct, but rather to place it into context in stating that the there is no credible evidence that the defendant was ever engaged in actual corrupt activity which was belied by his informing his supervisor and seeking approval for the plan. If the Government had such credible evidence, the parties would not have been able to reach a pre-trial resolution.

b)    The history and characteristics of the defendant.

The dozens of letters from family, friends and respected members of the community, including doctors, dentists, former prosecutors and active attorneys, business leaders, members of his church his former teachers, prospective employers and many others, attached for the Court's review (Ex. A), all describe Michael as a selfless and giving person who looks out for others; devoted to his children, mother and stepfather, and siblings; loved and respected by all who know him. They speak for themselves. The letters also universally confirm Michael's love and pride of his work as a law enforcement officer and his conduct in this case as a total aberration. As his twin sister, Kelly writes:

---

[2] For example, in New York, where a perjury charge is limited to false statements taken under oath. There is no Penal Law charge for making a false statement to any Official.

[3] Had this case proceeded to trial, there would have been substantial cross-examination of the Government's law enforcement witnesses regarding this subject matter, assuming such was deemed admissible by the Court.

4

"Sitting down to write about his character in this way feels less like a letter and more like something I would be writing if I were trying to preserve who he is for others, as if I were writing words meant for his funeral. That alone should convey the depth of loss and fear that our family has been facing for the last several years. For as far back as I can remember my twin has always known he would become a police officer. While I went through the rotary of careers I could one day be, he was unwavering. He wanted to protect people, to stand between harm and those who could not protect themselves. He has a genuine desire to defend others and serve. As children, we visited Montauk every summer. And every summer Michael had to get a pair of aviator sunglasses to look like a police officer. When I say he has been preparing for this role his entire life, I mean it. It's one of my core memories as a child. How could someone so young know exactly what they were meant to do? He worked relentlessly to become a New York State Trooper, which was difficult for him because he has a learning disability, but he persevered and made his dream a reality… After Michael was arrested he felt purposeless and couldn't sit idle. He reached out to our family friend who owns a funeral home and began volunteering his time consoling others during their time of grief. Again, putting his own suffering aside to help ease the burden that others were experiencing…To me, Michael is not a title or a uniform-he is everything good in this world and beyond. He is the person who has stood beside me through every joy and every tragedy of my life. He has continued to be honest, hardworking and deeply committed to doing what he believes is right despite the challenges life has put in his path. Michael took immense pride in his career and found true purpose in serving the public. He has lived his life in a way that reflected accountability and service to others." (Ex. B at 2-3)

Michael's mother, Barbara O'Flaherty writes that "becoming a police officer is something he had wanted to do since a very young age. At the age of 30 years old ,after leaving a successful career in banking, he persuade (sic) his lifelong dream of becoming a New York State Trooper. Unfortunately, that dream has now been taken away." (Id. at 4)

There is no greater confirmation of the way the defendant conducted himself as a law enforcement officer than from those who have worked with him for many years. (Ex. C) His colleague at NYSP, Investigator Royal Ciancanelli writes:

"Throughout my time in service, Investigator O'Flaherty has consistently demonstrated integrity, professionalism, and dedication to duty. As a member of the New York State Police, he has established himself as a reliable and respected Trooper and Investigator who performs his responsibilities with fairness, sound judgment, and a strong sense of accountability. His approach to

5

public service reflects a consistent commitment to the standards expected of law enforcement personnel.

In addition to his professional responsibilities, Investigator O'Flaherty is a devoted family man. He has maintained a strong commitment to his wife and children and has consistently prioritized his family responsibilities. He has also contributed his time to youth athletic programs, including volunteer coaching, where he has served as a positive influence on young people by promoting discipline, teamwork, sportsmanship, and respect. Based on my observations, Investigator O'Flaherty has earned the respect of his peers and those who have worked alongside him. He is regarded as dependable, professional, and of sound moral character. His conduct over the years reflects a consistent pattern of responsible decision-making and dedication to both his family and his profession. (Id. at 1)

NYSP Sergeant Eugene Donnelly (Ret.), also attests to Michael's integrity, having "had the opportunity to observe Michael's professional conduct firsthand on numerous criminal investigations. Throughout those years, Michael consistently demonstrated a strong work ethic, sound judgment, and genuine dedication to his responsibilities. He was the type of investigator who went above and beyond what was expected of him — not for recognition, but because he took his role seriously and cared about the integrity of his work. In all the time I worked alongside him, I never once witnessed him act unethically, improperly, or in a manner unbecoming of his position. He was, by every measure I could apply, a professional." (Id. at 2-3).

NYSP Senior Investigator Matthew Manza (Ret.) found Michael "to be a dependable, hard-working, and respectful person who has always treated others with kindness and consideration. He has consistently demonstrated a strong work ethic and was always willing to work difficult assignments due to his strong initiative and dedication. In my experience, he has been the type of person who is willing to help others when they need it and who values his relationships with family and friends.[As] an Investigator, Michael would always volunteer to assist me with my investigations, and he was the most motivated Trooper in the Wappinger NYSP barracks. While others were content with doing the bare minimum, I always knew Michael would complete his assigned tasks in a professional and thorough manner. When I later became a supervisor within the same troop as Michael, I was glad to see and hear that he continued to be a proactive and helpful police officer in his subsequent assignments." (Id. at 4)

Additional character letters from members of law enforcement from the City of Poughkeepsie Police Department are also attached for the Court's consideration. (Id.) Michael's attached NYSP personnel file (Ex. D), is full of Letters of Commendation for his work, "exceeding standards performance reviews" and details of his work ethic such as "Trooper O'Flaherty is the station leader in penal law enforcement and has made several high profile arrests...an aggressive troper with intimate knowledge of the criminal element in his patrol area...He can be relied on without supervision.. He is an asset..." (Id. at 15). I ask the Court to consider this record in support of the defense position that his conduct in this case was an

aberration and not a true reflection of either his overall history as a law enforcement officer or work ethic.





Finally, Michael has accepted full responsibility for his actions in this case as he writes throughout his letter (Ex. F):

> "Once I became a New York State Police Officer, life moved quickly, my daughter Madelyn was born and three years later my son Michael was born. I felt a sense of success with a great job, two kids and a great family. I felt like my father was looking down proud of me. I was able to prove myself as a good police officer with commendations and awards, I got promoted to investigator quicker than most.
>
> I ended up as an investigator in the narcotics unit, which to me was very important. I had family members affected by addiction, an aunt who died of AIDS and an uncle who abused drugs. I always wanted to help people in need, my aunt and uncle were amazing people who never let others see their struggles but never got the help they needed. I wanted to be the person who helped people like them. Give them a second chance, let them be the person they were born to be. I was always successful as an investigator in narcotics, breaking records, helping other investigators and never caring about the recognition. I did it because I loved it and I wanted to help others.
>
> November 21, 2024 everything changed, I was arrested by the Federal Government and charged with very serious crimes. I remember having the handcuffs put on me and getting transferred to the US Marshals, my life changed and I had lost everything and *the only person to blame was myself.* I sat in the back seat of the Marshals car from Poughkeepsie to White Plains, NY with nothing but time to think about how I have disappointed my father, my mother, my step father, my sister, my brother, and my kids. *In a moment I lost everything, due to my own decisions and stupidity... I put myself in this situation and I could only be mad at myself...*
>
> Your Honor, I realize my mistakes. I will stand in front of you and own my mistakes and not be proud of it but accept it. I am not perfect, I want to be but I realize I am not. I apologize to my family and friends for putting them through this. *I am*

*disappointed in myself, I lost everything I worked so hard for
because of my own decisions.* I will take this opportunity to
correct that and live my life the way my father and family expect
me to." (Id.) (Emphasis added).

I expect Michael to further address the Court at sentencing. On a personal note, I state unequivocally, that it has been a truly a pleasure to represent my client, Michael O'Flaherty. He very quickly made it clear to me that he accepted full for his actions and wanted me to assist him in achieving a just plea agreement. Throughout my representation of him he has always been friendly, respectful, punctual, attentive and responsive while giving thoughtful consideration to my legal advice. He maintained this attitude despite the enormous emotional toll this case has taken on him. I do not always get the opportunity to write about my clients in such glowing terms, but I do so here enthusiastically, for what it is worth.

The need for the sentence imposed. 18 U.S.C. § 3553(a)(2).

(a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(b) To afford adequate deterrence to criminal conduct and protection for the public.

As an initial matter, non-custodial sentences are "generally appropriate" for Zero-Point offenders in Zone A. See, USSG §5C1.1 n.9, and as Probation agrees, is appropriate here. I respectfully submit that the defense recommended sentence of a one-year term of Probation would be sufficient. As the Court will read during Your Honor's review of the exhibits in support, Michael has already lost his job as law enforcement officer, a position that he adored and what he believed provided him respect and pride from his loved ones. He will have the shame of a federal felony conviction on his record for the rest of his life, which will act as a constant reminder and specific deterrent from engaging in any future criminal activity. He has lost many friends in law enforcement, afraid to associate with him, due to the potential impact such continued contact could potentially have on their employment. He has comported himself in stellar fashion throughout the pendency of this case, complying with all of his conditions of release. As for general deterrence, the defense recommended sentence will certainly be a sufficient warning that engaging in similar conduct will result in the aforementioned consequences, a substantial penalty.

The Probation Office's recommended sentence of time served to be followed by three years' Supervised Release is far greater than necessary and frankly a waste of resources for obvious reasons. The defendant is gainfully employed, has no substance abuse issues, has sought mental help counseling on his own, has no prior criminal history whatsoever, a supportive and loving family and friends who have stuck by him, and children to raise. What issue does Probation think they will need to check on with him for a period of three years? Protection for the public is certainly not an issue. While I take no exception to a mental health condition, there is simply no justification for a search condition or the financial conditions sought by Probation. Even the Court were to impose their recommended fine of $500, how does that amount create the conditions necessary for such intrusion in a case like this? The defendant did not profit nor was he ever motivated by profit. There is no victim of fraud or restitution applicable here. Their request for these conditions is simply misplaced. Finally, as for 100 hours of community service,

9

I respectfully submit that, but for his actions in this case, the defendant's over 14 years of outstanding community service as a law enforcement officer with NYSP should suffice. Again, I contend that Michael does not need to reminded of the consequences of his actions. I submit that whatever term of supervision is imposed, it will be an easy job for the probation officer who is assigned to his case.

CONCLUSION

In sum, the defense requested Guidelines range sentence of probation for one year would fulfill all of the goals pursuant to 18 U.S.C. § 3553(a), sufficient but not greater than necessary. I urge the Court to impose the defense requested sentence.

Very truly yours,

Tanner & Ortega, L.L.P.

Howard E. Tanner

cc:    AUSA Jeffrey Coffman (By ECF and Email/PDF)

10